Argued December 16, 1970, affirmed January 28, petition
for rehearing denied March 9, petition for review
denied April 13, 1971

STATE COMPENSATION DEPARTMENT,
*Appellant, v.* BEAVER CREEK LUMBER
COMPANY, INC. ET AL, *Defendants,* CITIZENS
VALLEY BANK, *Respondent.*

480 P2d 441

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*James H. Jordan* and *Peter L. Powers,* Albany, argued the cause for respondent. With them on the brief were Weatherford, Thompson, Horton & Jordan, Albany.

Before Schwab, Chief Judge, and Langtry, Branchfield,* and Holman, Judges.

HOLMAN, J., (Pro Tempore.)

This was a suit by the State Accident Insurance Fund (the Fund) to foreclose two liens for contribu-

---

* Branchfield, J., did not participate in this decision.

tions due to the Fund from the defendant Beaver Creek Lumber Company (Beaver Creek). The property claimed to be subject to the liens is both real and personal. Various parties claim an interest in the property, including the defendant Citizens Valley Bank (the Bank), which had both mortgage and judgment liens that were prior in time to the liens of the Fund. The Bank's interests were adjudged by the trial court to be superior to that of the Fund, and the Fund appealed.

The basis for the trial court's ruling was that the application of the Oregon statutes in a manner which would make the Fund's lien prior to the previously established mortgages and judgments of the Bank would deprive the Bank of its property in violation of the due process and equal protection provisions of the United States Constitution. Because we are deciding that the Fund does not have a valid lien, it is unnecessary for us to determine the many constitutional questions decided by the trial court and raised by the appeal.

The Bank contends that priority should not be granted to the state's liens because the procedures taken for the liens' perfection were not proper. Subsection (3) of ORS 656.564① provides that the lien must be filed within sixty days after the employer is in default, as provided in ORS 656.560 (2).② "Default"

---

① ORS 656.564 (3): In order to avail itself of the lien created by this section, the fund shall, within 60 days after the employer is in default, as provided in ORS 656.560, file with the county clerk of the county within which such property is then situated a statement in writing * * *.

② ORS 656.560 (2): If any contributing employer fails to make payment of contributions required within 10 days after a written demand by the State Accident Insurance Fund * * *, such employer is in default * * *.

is defined to be a failure to pay contributions within ten days after written demand by the Fund. There is no time specified within which a demand must be made nor is there a definition of what constitutes a written demand.

The Fund stipulated that in the absence of payment, it regularly sends out statements of the amount due. However, it does not treat such a statement as the demand which is a prerequisite to default. What the Fund treats as a formal demand[3] was made on January 17, 1969, and a lien filed February 4, 1969, for contributions due from September 1, 1967, through March 31, 1968. Formal demand was also made on January 28, 1969, and a lien filed February 11, 1969, for contributions due from April 1, 1968, through November 30, 1968.

The Bank argues that the Fund's procedures and interpretation of what constitutes "demand" would give the state a secret and inchoate lien which attaches at the time the payment is due[4] and which continues until such time as the state chooses to trigger the time for filing by making a demand.

■ It is our duty to make sense out of an ambiguous statute and to construe it so that it can be applied in a reasonable manner. It is entirely unreasonable to believe that the legislature intended the demand provided for in ORS 656.560 to be one which could be withheld indefinitely at the option of the

[3] A registered letter, specifying the amount due and stating that a specific penalty and interest will be saved if the amount due is paid within ten days and containing the following statement: "Our responsibility under the law requires the issuance of this statutory demand for payment, as provided in ORS 656.560."

[4] Usually, the 15th of the month following the month during which the work was performed. See ORS 656.504.

Fund. Under such circumstances, the liens could be made retroactive for the space of many years at its option. In the present case, one of the liens was made retroactive for more than fifteen months. In the absence of a requirement that the demand be made within a definite time after the payments are due, it must have been intended by the legislature that the usual billing to the employer by the state upon no payment having been made by the due date constituted the contemplated demand. Statements of amounts due are usually treated as demands for payment.

■ Although the record indicates that statements of the amounts due were made, it does not show their date. Certainly, the first lien could not have been filed within seventy days (10 plus 60) from the time the amounts included therein were first billed to Beaver Creek. Some amounts included within the second lien could have been. However, it is impossible from the lien to tell to what extent. When lienable and non-lienable items are lumped together in a lien and they cannot be segregated without extrinsic evidence, the lien is unenforceable. *Wiggins v. Southwood Park Corp. et al*, 221 Or 61, 64, 350 P2d 436 (1960) and cases cited therein.

The judgment of the trial court giving priority to the Bank's interest in the disputed property is affirmed.